No. 24-875

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE APPLE IPHONE ANTITRUST LITIGATION

On Petition for Permission to Appeal from the
United States District Court for the Northern District of California
Case No. 4:11-cv-6714-YGR, Hon. Yvonne Gonzalez Rogers

## RESPONDENTS' ANSWER IN OPPOSITION TO THE PETITION
## FOR PERMISSION TO APPEAL UNDER RULE 23(f)

Betsy C. Manifold
Rachele R. Byrd
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599

Mark C. Rifkin
Matthew M. Guiney
Thomas H. Burt
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600

David C. Frederick
Aaron M. Panner
Joshua Hafenbrack
Kyle M. Wood
Anna K. Link
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900

*Counsel for Plaintiffs-Respondents*

March 4, 2024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ........................................................................ 1

BACKGROUND .......................................................................... 4

STANDARD OF REVIEW ............................................................. 11

REASONS FOR DENYING REVIEW ............................................. 12

    I.    The District Court Properly Applied *Olean* To Conclude
        Correctly That Prof. McFadden's Model Is Capable Of
        Showing Antitrust Injury On A Class-Wide Basis ............... 14

    II.    The District Court Considered, And Rejected, Apple's
        Objections To Prof. McFadden's Methodology ...................... 23

CONCLUSION .......................................................................... 30

CERTIFICATE OF COMPLIANCE ............................................... 31

CERTIFICATE OF SERVICE ..................................................... 32

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ..........................................................................23

*Apple Inc. v. Pepper*,
   139 S. Ct. 1514 (2019) ..................................................................4, 5

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) (per curiam)............................*passim*

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).......................................27

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ..........................................................................10

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023), *cert. denied*, 2024 WL
   156473 (No. 23-337) & 2024 WL 156474 (No. 23-344)
   (U.S. Jan. 16, 2024) ......................................................................4-5

*Ferreras v. Am. Airlines, Inc.*,
   946 F.3d 178 (3d Cir. 2019)..............................................................19

*General Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ..........................................................................18

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018)...............................................................18

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008)..............................................................19

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir.) (en banc), *cert. denied*,
   143 S. Ct. 424 (2022) ...............................................................*passim*

ii

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) .........................................21

*Schorsch v. Hewlett–Packard Co.*,
    417 F.3d 748 (7th Cir. 2005) ..........................................20

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) (en banc) ...................11-12

## STATUTE AND RULES

15 U.S.C. § 2 .......................................................................5

Fed. R. Civ. P. 23 .............................................11, 14, 17, 18, 22

Fed. R. Civ. P. 23(b)(3) ...........................................1, 5, 18

Fed. R. Civ. P. 23(f) .........................................................*passim*

Fed. R. Evid. 702...............................................................10

## OTHER AUTHORITIES

*In re Google Play Store Antitrust Litig.*,
    No. 22-80140 (9th Cir. Feb. 27, 2023), Dkt. 10 ................................3

*In re Pepperdine Univ. Tuition & Fees COVID 19 Refund Litig.*,
    No. 23-2676 (9th Cir.):

    Dkt. 1 (Oct. 10, 2023) ...................................................... 13

    Dkt. 15 (Nov. 17, 2023)....................................................13

1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions*
    (6th ed. 2022) ...........................................................21, 22

*Zuffa, LLC v. Le*, No. 23-80074 (9th Cir.):

    Dkt. 2-2 (Aug. 23, 2023) ..................................................13

    Dkt. 11 (Nov. 1, 2023)......................................................13

# INTRODUCTION

In *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 683 (9th Cir.) (en banc), *cert. denied*, 143 S. Ct. 424 (2022), this Court held that a district court assessing class certification under Rule 23(b)(3) must scrutinize any economic model used to establish common antitrust impact for "factors that may undercut [its] reliability (such as unsupported assumptions, erroneous inputs, or nonsensical outputs such as false positives) and resolve[] disputes raised by the parties." If, "after [that] rigorous review," the district court finds the model is "capable of establishing antitrust impact on a class-wide basis, it is for the jury, not the court, to decide the persuasiveness" of the parties' competing evidence. *Id.* at 678.

The district court below faithfully applied *Olean*: it analyzed extensive competing expert testimony, all focused on whether Plaintiffs' expert, Professor Daniel L. McFadden, a Nobel Laureate in economics, proffered a reliable econometric model capable of showing antitrust impact on a class-wide basis. Ultimately, none of Apple's eight experts persuaded the district court that Prof. McFadden's model was "flawed in a manner that would make it incapable of providing [that] class-wide

proof." *Id.* at 685; *see* Addendum to Pet. ("Add.") 7-15. On the contrary,

after conducting an exhaustive review of his work, the district court

found that "Professor McFadden's model can show the impact of Apple's

allegedly anticompetitive conduct across all class members" and can

precisely "compute which Apple accounts suffered damages and which

did not." Add. 26.

None of Apple's objections to the district court's conclusion

presents this Court with an "unsettled and fundamental issue of law

related to class actions" that typically justifies Rule 23(f) review. *See*

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005) (per

curiam). Nor do those objections come close to establishing the sort of

*manifest* error required to invoke this Court's interlocutory review. *See*

*id.* For instance, Apple argues (at 14-16) that the district court erred by

conditionally certifying the class; in fact, the district court considered

Apple's experts' objections to Prof. McFadden's methodology and his

rebuttals and found that Prof. McFadden's model *is* capable of proving

antitrust injury class-wide. Apple argues (at 18-20) that refining the

class to include only those App Store customers with at least $10 in

lifetime spending on the App Store is erroneous. In fact, such

2

modification of a class to enable identification (and exclusion) of class members with no measurable damages is appropriate, *see Olean*, 31 F.4th at 669 n.14, and nothing like a "fail-safe" class defined to include only individuals with valid claims. Apple's remaining arguments lack merit and raise no issue warranting Rule 23(f) review.

Finally, this Court's decision to grant Rule 23(f) review in the *Google* case cannot shoulder the weight that Apple (at 1, 20-22, and 30) places upon it in seeking review in this case. *See In re Google Play Store Antitrust Litig.*, No. 22-80140 (9th Cir. Feb. 27, 2023), Dkt. 10. The district court explained that plaintiff's expert methodology there was quite different than the expert's methodology here. Prof. McFadden's model does not suffer from the same methodological flaw as the model at issue in *Google*. As the district court stated, "[o]ther than noting that Judge Donato's order excluded [a different expert's] opinion . . . Apple does not explain how Judge Donato's order is relevant here." Add. 16 n.11.

The district court considered every dispute Apple's experts presented and "determined that [Prof. McFadden's model] was capable of showing that [all] class members suffered antitrust impact on a class-

3

wide basis, notwithstanding [those] critique[s]." *Olean*, 31 F.4th at 681 (emphases omitted). "This was all that was necessary at the certification stage." *Id.*

This Court should deny Apple's Petition.

## BACKGROUND

1.      Apple introduced the App Store in July 2008 to "sell[]" apps and in-app content "directly" to iOS device users. *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1519 (2019). "By contract and through technological limitations," Apple made the App Store "the only place" to purchase that content. *Id.* Today, "(almost) 100 percent of iOS apps are purchased from Apple's App Store" and all in-app purchases must occur there as well. ECF 442-11 ¶ 108. Apple therefore holds monopoly power in the market "for selling consumers iOS apps and in-app content." *Id.* ¶ 42.

Apple has exploited its monopoly power, most prominently, to extract a supracompetitive 30 percent commission on the sale of most paid apps and in-app content, generating "extraordinarily high" profit margins that "have exceeded 75% for years." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 984-85 (9th Cir. 2023), *cert. denied*, 2024 WL 156473

(No. 23-337) & 2024 WL 156474 (No. 23-344) (U.S. Jan. 16, 2024); *see* ECF 442-11 ¶¶ 31-32. Because app developers treat those commissions as a marginal cost of the apps and in-app content they sell when setting their prices, consumers have been subjected to "inflated" prices in the App Store as a result. ECF 442-11 ¶ 131.

**2.** Plaintiffs brought this class action in 2011 seeking damages under Section 2 of the Sherman Act, 15 U.S.C. § 2. ECF 1. After protracted litigation over Apple's unsuccessful motion to dismiss, *see Pepper*, 139 S. Ct. at 1519-21, the parties engaged in discovery and Plaintiffs filed for class certification under Rule 23(b)(3), ECF 441.

In support of their motion for class certification, Plaintiffs proffered Prof. McFadden's expert testimony on antitrust impact and damages. He opined that Apple's supracompetitive App Store commissions "serve[] effectively as a 'tax,'" ECF 630 at 3-4, that developers factor into the prices they set for their apps and in-app content sold through the App Store, ECF 442-11 ¶¶ 132, 167. Prof. McFadden developed an econometric model to determine the prices that developers would charge in a "but-for" world in which developers pay competitive commission rates. By showing that prices would have been

5

lower in that "but-for" world, the model both demonstrates the antitrust impact of Apple's unlawful monopolization and allows for the calculation of the overcharges that consumers pay – that is, their damages. *Id.* ¶ 149.

The parties' experts – and the district court – delved deeply into the weeds of Prof. McFadden's model. Drawing on standard econometric literature, the model assumes that developers set app and in-app content prices based on:

(1) the variable costs for developing, running, and maintaining the app and related in-app content, ECF 442-11 ¶¶ 185-208; ECF 556-1 ¶ 74; ECF 708-1 ¶¶ 77-79;

(2) consumer demand, ECF 442-11 ¶¶ 177-84; and

(3) Apple's commission rate, *id.* ¶ 220.

Using App Store transaction data and profit margin data obtained from app developers, Prof. McFadden used regression analysis and other econometric techniques to estimate consumer demand, and the effect of demand and developers' variable costs on App Store prices. *See id.* ¶¶ 180, 210; *id.* Appx. E ¶¶ 30-36. Those estimates then allow Prof. McFadden to calculate the but-for price of apps and in-app content as

6

well as, from those but-for prices, the total overcharge consumers paid. *Id.* ¶¶ 233-38.

The model also calculates how much of the overcharge is attributable to Apple's commission. ECF 679-1 ¶ 41. Overcharge percentages are calculated for every month in which consumers spent money on an app. *Id.* Using those overcharge percentages, the model is used to calculate, account-by-account and app-by-app, the overcharge each account incurred based on its spending on apps (including in-app content) in that month. *Id.* The model repeats this process for every account's spending on every app in every month. *Id.* ¶¶ 42-43. The model's final class-wide damages estimate is thus "an exact summation of individual account damages." *Id.* ¶ 43.

**3**.   Plaintiffs first sought class certification in June 2021, proffering Prof. McFadden's model as class-wide proof of antitrust injury and damages. *See* ECF 441 at 19-23. At the time, Prof. McFadden ran the model on a sample of transactions in the Games, Music, and Entertainment genres. ECF 442-11 ¶ 229. Apple proffered reports by several experts attacking the model, challenging everything

7

from specific data errors to the economic theories underlying the model.
*See generally* ECF 478, 479, 578.

In provisionally denying class certification, the district court
nonetheless broadly rejected most of Apple's challenges. It found that
Prof. McFadden's opinion that App Store commissions "serve[]
effectively as a 'tax'" was "scientifically sound," ECF 630 at 3-4, and
likewise found admissible most of Prof. McFadden's model, including
his framework for estimating but-for prices for in-app content, *id.* at 10-
11; *see also id.* at 12-14 (use of random sampling and excluding free
apps from the model).

However, the district court concluded that Prof. McFadden's
initial model had some data errors, *id.* at 7-9; contained two
unsupported assumptions, *id.* at 5-7, 11-12; and produced certain
irregular outputs, *id.* at 12-13. The court indicated that those
"deficiencies" likely could be remedied. *Id.* at 1-2. Writing before this
Court's decision in *Olean*, the district court finally noted that the
proportion of Apple accounts without damages (14.6 percent) might
raise questions about Plaintiffs' ability to show that common questions
regarding antitrust injury predominated over individual ones. *Id.* at

8

22-25.  The district court therefore provisionally denied Plaintiffs' initial motion for class certification and provided leave for Plaintiffs to address the court's concerns.  *Id.* at 1.

    **4.**    On September 26, 2022, Plaintiffs renewed their motion for class certification.  ECF 683.  For their renewed class certification motion, Plaintiffs refined the class definition to include only those Apple customers who spent at least $10 on app and in-app purchases on their iOS devices (such as iPhones, iPads, and iPods) since 2008.  *Id.* at 2.  With the $10 threshold, Prof. McFadden's model showed that the percentage of Apple accounts without measurable damages was 7.9 percent.[1]  ECF 679-1 ¶ 78.

    Prof. McFadden likewise refined his methodology to address the district court's concerns.  ECF 679-1 ¶¶ 1-17.  Prof. McFadden then ran

---

[1] Prof. McFadden has analyzed billions of transaction records for Apple accounts.  ECF 679-1 ¶ 15.  Because many App Store customers have more than one Apple ID, there are approximately three times as many accounts as actual Apple customers.  ECF 683 at 14 n.14; *see* ECF 478 at 1 n.1 ("some consumers have multiple Apple IDs").  Apple has not yet produced user data sufficient to match the accounts to particular App Store customers.  Therefore, Prof. McFadden is presently unable to match Apple accounts to actual class members.  However, the district court found that Prof. McFadden proposed a reliable methodology for using that data to match the accounts to users.  ECF 630 at 14.

his revised model on every purchase made in the Music, Games, and Entertainment genres through April 2022 – comprising "70 percent of the commerce on the App Store." ECF 736 at 73:23-74:1; *see* ECF 679-1 ¶ 15. Prof. McFadden identified precisely which accounts were harmed and estimated class-wide damages for those accounts. ECF 679-1 ¶¶ 43, 72-79.

Apple simultaneously filed both an opposition to class certification and a motion to exclude Prof. McFadden's model pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The *Daubert* motion focused largely on the model's inputs and other aspects of the model that remained unchanged from the initial motion for class certification. *See* ECF 690 at 7-25. Apple's class certification opposition, ECF 689, recycled its *Daubert* arguments. It asserted that defects in Prof. McFadden's model prevented Plaintiffs from establishing class-wide antitrust injury through common proof.[2]

---

[2] *Compare* ECF 689 at 7, 14 (marginal costs); *id.* at 7-8, 15-17 (focal-point pricing and price tiers); *id.* at 10-13 (Prof. Hitt's natural experiments); *and id.* at 14-15 (Prof. McFadden's modeling of but-for prices for in-app content), *with* ECF 690 at 8-9 (marginal costs); *id.* at 14-18 (focal-point pricing and price tiers); *id.* at 9-11 (Prof. Hitt's natural experiments); *and id.* at 11-13 (Prof. McFadden's modeling of but-for prices for in-app content).

The district court again thoroughly analyzed Apple's claims, found that Prof. McFadden's revised model adequately addressed Apple's objections and the court's concerns, and granted class certification. *See* Add. 7-15, 24-27. In particular, the court found that Prof. McFadden adequately justified each model input and modeling assumption, Add. 7-15, and that Plaintiffs could use the model to "show the impact of Apple's allegedly anticompetitive conduct across all class members," Add. 26.

"[T]he only dispute left" was whether the percentage of uninjured class members meant individual issues concerning antitrust injury would predominate. Add. 24 & n.18. The district court held that *Olean* answered that question. Specifically, *Olean* "rejected the argument that 'Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members.'" Add. 25 (quoting *Olean*, 31 F.4th at 669); *id.* at 27 ("*Olean* . . . rejected the argument that Rule 23 has an uninjured class member cutoff[.]").

## STANDARD OF REVIEW

This Court reviews class certification rulings under the "significantly deferential" abuse-of-discretion standard. *United States*

11

*v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).  In part reflecting district courts' broad discretion, "Rule 23(f) review should be a rare occurrence."  *Chamberlan*, 402 F.3d at 955.  This Court denies interlocutory review under Rule 23(f) absent a showing that (1) class certification creates a "death-knell situation" that effectively ends the litigation; (2) the "certification decision presents an unsettled and fundamental issue of law relating to class actions" that is "likely to evade end-of-the-case review"; or (3) the certification decision is "manifestly erroneous."  *Id.* at 959.

## REASONS FOR DENYING REVIEW

Apple's Petition presents no issue that clears the high bar for interlocutory review established in *Chamberlan*.  Apple does not (and could not) claim that the district court's certification decision sounds any "death knell" of this litigation.  Nor does it identify any unsettled legal issue of general importance for this Court to resolve.  Instead, its bid for interlocutory review focuses on the district court's fact-intensive application of the legal framework that this Court recently elaborated in *Olean*.  Apple seeks to find fault with the district court's resolution of

disputes over the adequacy of Plaintiffs' showing of class-wide antitrust impact.

Apple's complaints about the district court's analysis of competing expert testimony could rarely justify review under Rule 23(f), because such assertions of error raise "familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings." *Chamberlan*, 402 F.3d at 959. Accordingly, this Court routinely denies Rule 23(f) petitions built upon such narrow, case-specific arguments. *See, e.g.*, *In re Pepperdine Univ. Tuition & Fees COVID 19 Refund Litig.*, No. 23-2676 (9th Cir.), Dkts. 1 (Oct. 10, 2023) and 15 (Nov. 17, 2023) (denying Rule 23(f) petition based on conflicting expert testimony over class-wide damages model); *Zuffa, LLC v. Le*, No. 23-80074 (9th Cir.), Dkts. 2-2 (Aug. 23, 2023) and 11 (Nov. 1, 2023) (similar).

Any exception to this rule requires a showing that the district court committed a "manifest" error – that is, one that is "virtually certain to be reversed on appeal from the final judgment." *Chamberlan*, 402 F.3d at 962. And "[i]t is difficult to show that a class certification

13

order is manifestly erroneous unless the district court applies an incorrect Rule 23 standard or ignores a directly controlling case." *Id.*

Because Apple identifies no error – let alone a manifest one – its Petition should be denied.

## I.   The District Court Properly Applied *Olean* To Conclude Correctly That Prof. McFadden's Model Is Capable Of Showing Antitrust Injury On A Class-Wide Basis

**A.**    The district court correctly resolved the parties' disputes over whether Prof. McFadden's model provides common, class-wide proof of antitrust injury – just as *Olean* demands.

At the class certification stage, the district court's "task was to determine whether [Prof. McFadden's model] was capable of showing class-wide impact, not to reach a conclusion on the merits of [Plaintiffs'] claims." *Olean*, 31 F.4th at 676. "A court must decide if the expert's methodology is 'capable of showing class-wide antitrust impact' in light of 'factors that may undercut the model's reliability (such as unsupported assumptions, erroneous inputs, or nonsensical outputs).'" Add. 24 (quoting *Olean*, 31 F.4th at 683).

The district court conducted that rigorous analysis and found that Prof. McFadden's model met that standard. The court assessed each

14

objection that Apple raised about the adequacy of Prof. McFadden's methodology.  *See* Add. 7-15.  Indeed, Apple does not even claim that the court overlooked any issue it presented.  In every instance, the district court rejected Apple's arguments, articulating its reasons for doing so.  *E.g.*, Add. 7-8 (crediting Prof. McFadden's justifications for modeling marginal costs at the app level instead of for each individual item of in-app content); Add. 10-12 (crediting Prof. McFadden's justifications for how he incorporated focal point pricing and Apple's anticompetitive price tiers into the model's calculation of but-for prices); Add. 7, 12, 13 (rejecting arguments because Apple's experts "misconstrue[d]" or "mischaracterize[d]" Prof. McFadden's model).

In short, the district court considered all the "factors that may undercut the model's reliability . . . and resolve[d] disputes raised by the parties." *Olean*, 31 F.4th at 683.  It "therefore did not abuse its discretion," let alone commit manifest error, "in concluding that [Prof. McFadden's] methodology was reliable and capable of showing class-wide impact." *Id.*

**B.**    Apple's counterarguments identify no manifest error warranting this Court's review.

15

**1.**    The District Court Did Not "Conditionally" Certify the Class.

Apple erroneously claims (at 14-16) that the district court erred in granting "conditional" certification.   The court did no such thing. Rather, the court determined that Prof. McFadden's model is capable of proving antitrust injury class-wide because it "*can* show the impact of Apple's allegedly anticompetitive conduct across all class members," and "*can* compute which Apple accounts suffered damages and which did not." Add. 26 (emphases added).  Those determinations are not conditional.

Contrary to Apple's arguments (at 14-15), the district court's order never made class certification contingent on future developments. *Olean* requires the district court to find, after a rigorous analysis, that a "common question" (here, antitrust impact and damages) "is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." 31 F.4th at 666-67.  The district court here conducted that analysis.  Prof. McFadden ran his model on the top three app categories (Music, Games, and Entertainment), which compose 70 percent of the total commerce in the App Store dataset. ECF 736 at 73:23-74:1; *see* ECF 679-1 ¶ 15.  He explained to the district

court why (based on literature and data) his model reliably calculates damages and identifies uninjured Apple accounts. After weighing those explanations against all of Apple's contrary arguments, the district court resolved the dispute in favor of admissibility and class certification. Add. 7-15, 26-27.

To be sure, Prof. McFadden has not yet run his model across the entire App Store transactions dataset and identified every uninjured class member. But nothing in this Court's Rule 23 jurisprudence compelled the district court to require Prof. McFadden to do so, and Apple never made such an argument to the district court. Apple cannot now claim that the certification order is conditional because Prof. McFadden has not yet run the full model or matched Apple accounts to consumers – particularly since Apple thus far has refused to produce the data necessary for Plaintiffs to complete this process. *See* ECF 638 at 9:18-21; ECF 791 at 5. Moreover, the district court has already approved Prof. McFadden's proffered method for matching accounts to

17

consumers before trial once Apple produces the data.  ECF 630 at 14.[3]
There is nothing conditional about that finding, either.

The district court's statement that it retains the power to decertify the class if Plaintiffs cannot confirm their model's reliability at the merits stage, or accurately match all of the Apple accounts in the App Store transaction dataset to class members, hardly renders its certification order conditional.  *Contra* Pet. 14-15.  District courts always retain the power to decertify classes.  *See, e.g., Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  A statement that future developments may require amendments to the class does not render the certification order conditional.  Rather, Rule 23 is concerned with whether the district court rigorously assessed the evidence the parties presented before concluding that the plaintiffs presented issues capable

---

[3] The identification problem Apple points to (at 20) in *In re Asacol Antitrust Litigation*, 907 F.3d 42, 53-54 (1st Cir. 2018), is absent here. In *Asacol*, the only way to ascertain injury (whether a class member would have switched from a brand-name to generic drug) was to ascertain each member's subjective preferences.  *Id.*  Plainly, "a trial in which thousands of class members testify" does not satisfy Rule 23(b)(3).  *Id.* at 57-58.  Here, as the district court found, all class members can use Prof. McFadden's "straightforward" mathematical damages model to prove antitrust injury, *see Olean*, 31 F.4th at 681-82 & n.31, and any uninjured class members will be precisely identified before trial.

18

of class-wide resolution – which is what the district court did here.  *See Olean*, 31 F.4th at 666-67.

Apple's reliance (at 16) on Third Circuit authority is unpersuasive. The expert in *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008), offered purely hypothetical methods for proving injury through common evidence.  *Id.* at 313.  The expert did not construct any model capable of establishing antitrust injury on a class-wide basis, let alone run a simulation, before class certification.  *Id.* And *Ferreras v. American Airlines, Inc.*, 946 F.3d 178 (3d Cir. 2019), did not concern antitrust injury at all.  Rather, the plaintiff in that case failed to show a common method to prove the key factual issue (whether employees were "actually working during the various time periods for which they claim they were not paid") in a wage-and-hour dispute.  *Id.* at 184.

The material differences between the facts here and Apple's cited authority only reinforce why Rule 23(f) review is not warranted.  *See Chamberlan*, 402 F.3d at 962 ("Class certification decisions rarely will involve legal errors, however, simply because class actions typically

involve complex facts that are unlikely to be on all fours with existing precedent.").

2.  <u>The District Court's Acceptance Of Plaintiffs' Refined Class Definition Complied With *Olean*.</u>  Rather than commit manifest error, the district court acted well within *Olean*'s guidance to accept Plaintiffs' refined class definition.  *Olean* instructs that a potentially overbroad class definition "can and often should be solved by refining [it] rather than by flatly denying class certification on that basis."  31 F.4th at 669 n.14.  Plaintiffs refined the class definition to include only iOS device owners whose lifetime spending on apps and in-app purchases exceeded $10.  That refinement reduced the percentage of uninjured class members by nearly two-thirds, thereby simplifying class administration and reducing costs.  *See* Add. 25.

Apple cites no authority to contest the propriety of a $10 spending threshold.  On the contrary, plaintiffs are generally free to refine their class definition as they see fit.  *See Olean*, 31 F.4th at 669 n.14 (citation omitted); *Schorsch v. Hewlett–Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("Litigants and judges regularly modify class definitions[.]").  That is especially true here, where the class definition, as refined,

"reveals a reasonably close fit with Plaintiffs' theory of liability." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1139 (9th Cir. 2016). Class membership mirrors Plaintiffs' liability theory, and it is hardly uncommon to rely on numerical thresholds to define a manageable class. *Id.* at 1131-32 (using $12-per-hour earnings cutoff to define a class, even though the $12 wage was not the basis for the defendant's liability).

Contrary to Apple's argument (at 19), such a class definition is nothing like a "fail-safe" class – one in which membership is contingent upon the defendant's liability. *Ruiz Torres*, 835 F.3d at 1138 n.7; *see* 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 2:3 (6th ed. 2022) ("the class cannot be defined solely in terms of the injury being litigated"). If an iOS device owner spent at least $10 in the App Store since 2008, they are members of the class (subject to notice and opt-out) and will be bound by whatever verdict the jury reaches. Membership in the certified class is simply a function of the amount each class member spent and has nothing to do with Apple's liability. Accordingly, the class here is not defined to allow "putative class

members to seek a remedy but not be bound by an adverse judgment." *See* 1 Rubenstein, *supra*, § 2:3.

**3.** <u>The District Court Resolved Expert Disputes Just As *Olean* Instructs.</u>  Apple cannot dispute that the district court resolved all of the issues that Apple seeks to raise before this Court, *see* Add. 7-15, or that the court weighed Prof. McFadden's explanations and Apple's rebuttals to resolve those methodological disputes, *see Olean*, 31 F.4th at 676, 683.

The fact that the district court addressed the parties' expert disputes in one portion of its opinion (under a *Daubert* heading) does not support Apple's claim (at 16-17) that the court failed to conduct the proper analysis in resolving the predominance question.  On the contrary, the district court explicitly recognized that admissibility alone does not answer the Rule 23 predominance question.  Add. 24 (quoting *Olean*, 31 F.4th at 683).  But in this case, Apple made *the same arguments* related to Prof. McFadden's methodology both to support its *Daubert* motion and in opposition to class certification.[4]  "Requiring the district court to [repeat] its analysis would produce nothing more than a

---

[4] *See supra* note 2.

22

lengthy explanation of the obvious." *Chamberlan*, 402 F.3d at 962 (rejecting claim that court's failure to expand on its analysis more was manifest error); *see also* ECF 736 at 5:19-21 ("the class certification issues dovetail with the *Daubert*" issues).  Indeed, Apple cites no specific argument that the district court overlooked or failed to address.

Apple disagrees with the district court's decision to credit Prof. McFadden's model over the objections of its eight experts.  But district courts are not tasked with deciding – at the class certification stage – which of two competing experts is more persuasive:  the district court was required instead to determine whether Plaintiffs' damages model is admissible and capable of proving injury on a class-wide basis.  *Olean*, 31 F.4th at 679 ("A lack of persuasiveness is not fatal at certification."); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (plaintiffs need not "win the fray" at class certification).  The district court made the determination that *Olean* requires.  *See supra* pp. 14-15.

## II.    The District Court Considered, And Rejected, Apple's Objections To Prof. McFadden's Methodology

The district court's finding that Prof. McFadden's model is sufficiently reliable to show class-wide antitrust injury was correct; it

was certainly not manifest error. The district court considered and rejected every argument made by Apple's experts about the purported flaws in Prof. McFadden's model. The court's fact-intensive determinations – which do not implicate any general questions of law – were fully justified on the record and do not warrant Rule 23(f) interlocutory review. Contrary to Apple's arguments (at 21-29), Prof. McFadden's model employs accepted principles to establish class-wide injury and damages.

1.  <u>Prof. Hitt's "Natural Experiments" Raised An Irrelevant Dispute.</u> Prof. Hitt's so-called "natural experiments" do not reveal any flaw in Prof. McFadden's model; they merely "articula[te] a different perspective on what would have happened in the but-for world." Add. 8. Prof. Hitt observed that, when the App Store reduced commissions for certain apps, their price did not go down; he argued that this showed that Prof. McFadden's model (which, he said, would have predicted a price decrease) was unreliable. ECF 688-3 ¶¶ 52-54, 102-04. But Prof. McFadden's model predicted what would happen in a but-for world in which Apple's App Store would have faced competing app stores, would have charged lower commissions across the board, and would have

24

allowed different price tiers. *See* ECF 666-2 ¶¶ 28, 40; ECF 442-11 ¶¶ 128-29. The district court therefore reasonably determined that Prof. Hitt's experiments "say nothing about Professor McFadden's methodology." Add. 8.

As the district court correctly recognized, Prof. Hitt's natural experiments fail to challenge Prof. McFadden's methodology; at most, they posit an alternative result. Add. 8-9. Whatever probative value Prof. Hitt's experiments might have before a jury, they have no bearing on whether the methodology Prof. McFadden employed to model a hypothetical world is "flawed in a manner that would make it incapable of providing class-wide proof." *Olean*, 31 F.4th at 685.

2. <u>Prof. McFadden's Model Reliably Predicts But-For Prices For In-App Content, Even Though Those Prices Often Do Not Match Apple's Price Tiers.</u> In Prof. McFadden's model, not every in-app purchase's but-for price matches Apple's price tiers (which all end in 99 cents). That is a direct result of Prof. McFadden's modeling choices, which the district court has already approved. ECF 630 at 10. This is not a flaw; his model works as intended.

One of the inputs Prof. McFadden uses to calculate but-for prices is a developer's marginal costs – effectively, the costs of running, maintaining, and supporting an app.  *See* ECF 442-11 ¶¶ 185-208; ECF 556-1 ¶ 74; ECF 708-1 ¶¶ 77-79.  "[D]evelopers consider" those app-level costs "when setting prices."  ECF 630 at 10 (citing ECF 556-1 ¶¶ 142-44).  To reflect that market reality, Prof. McFadden developed his model to predict but-for prices for in-app content at the "app level," which he does by "aggregat[ing]" all of the in-app offerings for a given app "per month, per Apple ID."  ECF 630 at 10.  "He then calculated an average to determine the as-is price for that app and used that as-is price in calculating the but-for price."  *Id.*  During the first round of class certification, the district court approved of this modeling decision, *id.* at 10-11, and Apple does not challenge it here.

These aggregate as-is prices "do not necessarily end in 99 cents" as a result of averaging.  ECF 708-1 ¶ 50.  Consequently, it is "no surprise" that average app prices in Prof. McFadden's but-for model often do not end in 99-cent increments.  Add. 11.  That says nothing about the reliability of Prof. McFadden's model, which was not designed to produce individual, item-level but-for prices.  *See id.*

26

Furthermore, as the district court found, Prof. McFadden's model *can* reliably accommodate a but-for world with Apple's price tiers. *Id.*[5] He proffered and implemented an alternative methodology in which developers choose their average in-app content prices "consistent with the increments set out in Apple's tier schedules." *Id.*; ECF 679-1 ¶¶ 85-92.[6] He also proffered and implemented a *third* methodology that worked identically, but instead used "a more granular, 750-point pricing structure" in which all but-for prices below $50 ended in 9 cents, and all prices above $50 ended in 99 cents. Add. 11; ECF 679-1 ¶ 93. It will be the jury's job to assess antitrust injury and damages in light of the

---

[5] As the district court noted, Prof. McFadden appropriately declined to incorporate Apple's price tiers into the primary iteration of his model to reflect Plaintiffs' claim that Apple's price tiers are themselves anticompetitive. Add. 10-11; *see Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[A]ny model supporting a 'plaintiff's damages case must be consistent with its liability case[.]'" (citation omitted)).

[6] One of Apple's experts, Prof. Prince, purported to test how the model incorporates Apple's price tiers. *See* Pet. 27 (citing ECF 688-5 ¶¶ 131-32). Those tests, however, "change[d] [Prof. McFadden's] methodology" by using his estimation of marginal costs and consumer demand (all done at the app level) to try and calculate *item level* but-for prices for in-app content. ECF 708-1 ¶¶ 52-53. As Prof. McFadden explained, changing his model's methodology and then using those results to claim his *actual* model is flawed "is not a sound economic analysis." *Id.* ¶ 109.

evidence at trial, including the alternative models that Plaintiffs may introduce.

3. <u>Prof. McFadden's Model Properly Accounts for Developers' Marginal Costs.</u>  Contrary to Apple's assertions (at 28-30), Prof. McFadden's model reliably incorporates marginal costs into the but-for price calculation.

As explained, "when Professor McFadden posits that app developers have marginal costs, he is looking at how costs change" for an entire app "when operating at scale."  Add. 7 (citing ECF 556-1 ¶¶ 73-74).  He is *not* looking at the costs of "producing one additional unit of a digital good" that is sold as an in-app purchase.  *Id.*  Indeed, there are many real-world examples of positive marginal costs at the app enterprise level:  user acquisition costs and royalty fees are common ones.  Add. 8 (citing ECF 442-11 ¶¶ 198, 201, 206).  This modeling decision, as the district court found, is justified by both the economic literature and real-world data.  Add. 7-8.

Because Prof. McFadden's model considers marginal costs at the app level, it is inaccurate for Apple to claim (at 29) that the model predicts it costs $24 to make one V-buck (Fortnite's virtual currency).

"[W]hen Professor McFadden states that Fortnite incurs marginal costs" of $24, he is referring to "all of the different variable costs that come along with [its] iOS app monetization business"—not the cost of making one V-buck.  Add. 7-8 (quoting ECF 556-1 ¶ 74) (second alteration in original).  So, in the district court's words, Apple's argument on this point "misconstrues Professor McFadden's model." Add. 7.  That is hardly a reason to grant Rule 23(f) review.

29

## CONCLUSION

For the foregoing reasons, the Petition should be denied.

Date:  March 4, 2024

Respectfully submitted,

_/s/ David C. Frederick_

Betsy C. Manifold
Rachele R. Byrd
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
manifold@whafh.com
byrd@whafh.com

Mark C. Rifkin
Matthew M. Guiney
Thomas H. Burt
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600
rifkin@whafh.com
guiney@whafh.com
burt@whafh.com

David C. Frederick
Aaron M. Panner
Joshua Hafenbrack
Kyle M. Wood
Anna K. Link
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900
dfrederick@kellogghansen.com
apanner@kellogghansen.com
jhafenbrack@kellogghansen.com
kwood@kellogghansen.com
alink@kellogghansen.com

_Counsel for Plaintiffs-Respondents_

30

## CERTIFICATE OF COMPLIANCE

This Answer in Opposition complies with the word limit of Circuit Rules 5-2(b) and 32-3(2) because it contains 5,537 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 5-2(b).

The Answer in Opposition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Century Schoolbook font.

Dated:  March 4, 2024                    */s/ David C. Frederick*
                                          David C. Frederick

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 4, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated:  March 4, 2024                    */s/ David C. Frederick*
                                          David C. Frederick